# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

NOEMIE PROPHETE JEAN-BAPTISTE,

*Plaintiff,*

- against -

CITIBANK, N.A., CITIBANK, N.A. 1871 NOSTRAND
AVENUE, BROOKLYN, NY 11226

*Defendants.*

Index No. _____

**SUMMONS**

Date Index No. Purchased:
April 28, 2025

TO:    CITIBANK, N.A.
       c/o CT Corporation. Inc.
       28 Liberty Street
       New York, New York 10005

       CITIBANK, N.A.
       1871 Nostrand Avenue,
       Brooklyn, New York 11226

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer on the Plaintiff's attorneys within twenty (20) days after the service of this
summons, exclusive of the day of service, or within thirty (30) days after service is complete if
this summons is not personally delivered to you within the State of New York.  In case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
in the complaint.

       The basis of the venue designated is the Plaintiff's residence.  Plaintiff designates Kings
County as the place of trial.

Dated:     April 28, 2025     By:     _/s/ Rajat Rana_____
     New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Sascha Rand
Rajat Rana
Kamya Trivedi
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
sascharand@quinnemanuel.com
rajatrana@quinnemanuel.com
kamyatrivedi@quinnemanuel.com

**THE LEGAL AID SOCIETY**
Elizabeth M. Lynch
Claire Mooney
The Legal Aid Society
153-01 Jamaica Ave, Suite 202
Jamaica, New York 11432
(718) 286-2450
emlynch@legal-aid.org
cmooney@legal-aid.org

*Attorneys for Noemie Prophete Jean-Baptiste*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

NOEMIE PROPHETE JEAN BAPTISTE,

*Plaintiff,*

- against -

CITIBANK, N.A., CITIBANK, N.A. 1871 NOSTRAND
AVENUE, BROOKLYN, NY 11226

*Defendants.*

Index No. _____

**VERIFIED COMPLAINT**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

NATURE OF THE ACTION ..................................................................................................1

THE PARTIES.......................................................................................................................2

JURISDICTION AND VENUE ............................................................................................3

FACTUAL BACKGROUND.................................................................................................3

I.      Ms. Jean Baptiste Visits a Citibank Branch to Open Two Bank Accounts ........................3

II.     Citibank Fails to Protect Ms. Jean Baptiste From the Unauthorized Transfer ...................5

III.    Ms. Jean Baptiste Was Seriously Harmed by Citibank's Inadequate Security
Procedures and Misrepresentations....................................................................................11

CLAIMS FOR RELIEF ......................................................................................................12

COUNT I ..................................................................................................12

COUNT II .................................................................................................14

COUNT III................................................................................................16

COUNT IV ...............................................................................................18

PRAYER FOR RELIEF ......................................................................................19

Plaintiff NOEMIE PROPHETE JEAN BAPTISTE ("Ms. Jean Baptiste"), by and through her attorneys, The Legal Aid Society of New York and Quinn Emanuel Urquhart & Sullivan, LLP, submits this Complaint against Defendants Citibank, N.A. and Citibank, N.A. at 1871 Nostrand Avenue, Brooklyn, New York 11226 (the "Nostrand Branch") (collectively, "Citi" or "Citibank" or the "Bank") and in support alleges as follows:

## NATURE OF THE ACTION

1.     Noemie Prophete Jean Baptiste brings this action to recover her life savings, amounting to almost $30,000,[1] which were stolen from her Citibank account as the result of an unauthorized wire transfer that Citibank executed despite fraud warnings from Citi's own security systems and Ms. Jean Baptiste's confirmation that she had not initiated the wire and that it should not be completed.

2.     In April 2022, shortly after Citibank alerted Ms. Jean Baptiste about the "suspicious" wire transfer request, Ms. Jean Baptiste immediately replied to Citibank's alert to confirm that she did not make or authorize the transfer.  She then called the customer service number on the back of her debit card.  During Ms. Jean Baptiste's call to Citibank, Citibank confirmed that it had received her notice that the transfer was unauthorized and that her stolen savings would be returned to her as soon as she opened a new account.  Ms. Jean Baptiste did so, but her savings were not returned.

3.     The next day, Ms. Jean Baptiste was the first customer in line at Citibank's Nostrand Avenue branch, the very same branch where she had first opened her accounts.

---

[1]   The scammers transferred $36,200 out of Ms. Jean-Baptiste's account.  After prodding, Citibank reimbursed Ms. Jean-Baptiste merely $6,200.02 two months after the fraud occurred.  Ms. Jean-Baptiste still has not recovered the balance of her account.

4.     Citibank instructed her that she now needed to complete an Affidavit of Unauthorized Wire Transfer and file reports with the New York Police Department and the Federal Bureau of Investigation.  Again, Citibank assured her that by doing so, her savings would be returned to her account within 30-60 days.  And again, Ms. Jean Baptiste dutifully complied, but her savings were not returned.

5.     The consequences of this unauthorized transfer of her life savings have been severe. Without these funds, Ms. Jean Baptiste and her family have had to borrow money from friends and family to survive, all while juggling their living expenses with the mounting expenses associated with Ms. Jean Baptiste's cancer treatment.

6.     After jumping through every hoop Citibank erected, Citibank still has not returned the $30,000 it promised to return.  Ms. Jean Baptiste is, accordingly, now forced to bring suit against Citibank under N.Y. U.C.C. § 4-A-204 for the Bank's unauthorized processing of the wire, as well as claims under GBL § 349, and common law claims of gross negligence and breach of the duty of ordinary care for Citibank's deficient handling of this fraudulent attack which depleted Ms. Jean Baptiste's savings.[2]

## THE PARTIES

7.     Noemie Prophete Jean Baptiste is a mother of two residing in Flatbush, Brooklyn with her husband and children.  Ms. Jean Baptiste is of Haitian descent and her primary language is Kreyòl Ayisyen[3] ("Kreyòl"); Ms. Jean Baptiste has very limited proficiency in English.  She

---

[2]  The New York Attorney General brought suit against Citibank on behalf of consumers premised on similar allegations and asserting claims under, *inter alia*, the Electronic Funds Transfer Act, N.Y. U.C.C. § 4-A-204, GBL § 349, and fraud.  *See* Complaint, *The People of the State of New York v. Citibank, N.A.*, 24-CV-659 (S.D.N.Y. Jan. 30, 2024), *available at* https://ag.ny.gov/sites/default/files/2024-01/citi-complaint.pdf.

[3]  Kreyòl Ayisyen, colloquially referred to in the United States as Haitian Creole, is the primary national language of Haiti, and Ms. Jean-Baptiste's first language.

2

obtained a basic education in Haiti. Ms. Jean Baptiste is currently on leave from employment in between intensive cancer treatment and follow up screenings.

8.      Defendants Citibank, N.A. are a national banking association incorporated under the laws of South Dakota, with their principal place of business at 388 Greenwich St., New York, New York 10013. Defendants maintain branches across the country, including the branch located at 1871 Nostrand Avenue, Brooklyn, New York 11226, where Ms. Jean Baptiste opened her checking and savings account.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under CPLR § 302. Defendants' parent company, Citigroup, Inc. has designated CT Corporation as its registered agent for service of process in New York.

10.     Venue is proper in Supreme Court, Kings County under CPLR § 503 as the county where Plaintiff resides.

## FACTUAL BACKGROUND

### I.      Ms. Jean Baptiste Visits a Citibank Branch to Open Two Bank Accounts

11.     On March 10, 2020, Ms. Jean Baptiste decided to open a checking and savings account with Citibank. This was the first time Ms. Jean Baptiste opened a bank account solely in her name, thus she was completely inexperienced in how to open a bank account. She visited the Nostrand Branch, located in the predominantly Haitian neighborhood of Flatbush where Ms. Jean Baptiste and her family reside.

12.     During the account opening process, Citibank affirmatively explained only two provisions of Ms. Jean Baptiste's account relationship with the Bank: (i) Ms. Jean Baptiste could only write checks from her checking account; and (ii) that Ms. Jean Baptiste was required to

3

maintain a minimum balance in her account to avoid a maintenance fee. No other terms or conditions of her agreement with Citibank were discussed or alluded to.

13.     Ms. Jean Baptiste was not offered digital or physical copies of any account opening documents. Instead, a Citibank employee, seated at a desk with their computer facing away from Ms. Jean Baptiste at all times, proceeded through a series of documents that, upon information and belief, included terms and conditions of a contract with Citibank. Even if she could have seen the computer screen, Ms. Jean Baptiste does not possess the language skills or experience to review commercial agreements herself, which the Bank was aware of.

14.     Throughout the account opening process, the Bank intermittently asked Ms. Jean Baptiste to sign an electronic tablet that was blank save for a signature line. The Bank did not advise Ms. Jean Baptiste as to what she was signing, and when asked, stated that her signature was needed to open the checking and savings accounts. Ms. Jean Baptiste signed the documents as instructed.

15.     The Bank then encouraged and assisted Ms. Jean Baptiste with creating an online banking account and downloading Citibank's mobile application ("Citi Mobile") on her phone. Ms. Jean Baptiste did not set up or authorize online wire transfer capabilities at any point during this process.

16.     After about an hour at the Nostrand Branch, the Bank opened both a checking and a savings account for Ms. Jean Baptiste, into which she deposited a combined sum of $2,500. Ms. Jean Baptiste was sent home with a letter envelope containing only one document, the "Customer Care Checklist" (attached hereto as Ex. A).

17.     Throughout the entirety of the account opening process Ms. Jean Baptiste was completely at Citibank's mercy, who was aware that Ms. Jean Baptiste: (i) did not possess the

4

language skills to independently read the documents she was signing; (ii) would not, without the Bank's explanation, have actual or inquiry notice of the terms and conditions she agreed to when opening her account with Citibank; (iii) was not aware that her signature on the blank tablet screen amounted to affirmative assent to a contract with Citibank comprised of additional terms and conditions imposed by the Bank; and (iv) did not have a meaningful choice in agreeing to the terms and conditions Citibank imposes on consumer deposit customers.

## II.  Citibank Fails to Protect Ms. Jean Baptiste From the Unauthorized Transfer

### A.    The Phishing Scam and Citibank's Investigation

18.    Two years later, on April 28, 2022, at or around 6 AM EST, Ms. Jean Baptiste received a fraudulent text from a number she did not recognize (the "Phishing Text") pretending to be Citibank.  The Phishing Text asked her to verify her account information using a link provided in the text message.

19.    Unfortunately, Ms. Jean Baptiste clicked on the link, and was taken to a website which appeared to be operated by Citibank, where she entered her account information.

20.    At 2:44 PM EST that same day, Ms. Jean Baptiste received a legitimate fraud alert from Citibank via email asking whether she recognized a suspicious wire transfer of $36,200 from her savings account.

21.    As soon as Ms. Jean Baptiste saw the 2:44 PM alert, she quickly pressed the bright-red "NO" button on the email, indicating that she did not recognize this transfer.  Panicked that she had just lost her savings—the money she was saving for her retirement and her children's future—Ms. Jean Baptiste immediately called the customer service number located on the back of her Citibank debit card.

22.    On this call, Ms. Jean Baptiste spoke to one of Citibank's customer service agents (the "Agent"), who confirmed that Citibank had received her "NO" reply to its email.  The Agent

5

stated that Citibank had locked her bank account and that her funds would be returned to her. To get her savings, however, Ms. Jean Baptiste needed to visit a Citibank branch and open a new account.

23.    At 2:47 PM EST, the Bank sent Ms. Jean Baptiste another email informing her that the hold on her account had been lifted, and that scammers had transferred $36,200, almost all of the money in her savings account, to a person named "Darrian L," who she did not know and had never transacted with previously (the "Unauthorized Transfer"). Citibank charged Ms. Jean Baptiste a $25 domestic funds transfer fee for the Unauthorized Transfer.

24.    Ms. Jean Baptiste went to sleep that night assured that so long as she opened a new account, Citibank would return her life savings. Citibank's promise faded away into a nightmare.

25.    On April 29, 2022, one day after the Unauthorized Transfer occurred, Ms. Jean Baptiste was the first customer in line when the Nostrand Branch opened at 9 AM. While there, a teller called Citibank's Fraud Department on her behalf. Citibank instructed her to complete a series of documents and promised her that by doing so her savings would be returned.

26.    Citibank first asked Ms. Jean Baptiste to fill out an "Affidavit of Unauthorized Wire Transfer" (the "Affidavit") and have it notarized.

27.    Upon information and belief, it is Citibank's standard practice to have customers complete these affidavits to kickstart the Bank's *pro forma* fraud investigation.

28.    In the Affidavit, Ms. Jean Baptiste described the events leading up to the Unauthorized Transfer, including that she had clicked on a link in the Phishing Text, believing it was a legitimate alert from Citibank, and wrote "I did not give permission to any one [sic] to transfer or take any money. I was receiving a text message from Citi, I was thinking it was Citibank

and I click on. I have no idea about that person who was taking any money. I don't know that person."

29.     The Bank then asked Ms. Jean Baptiste to open a new account and fill out reports with the NYPD and the FBI. Citibank once again assured Ms. Jean Baptiste that if she completed these steps, Citibank would reimburse her money.

30.     As instructed, Ms. Jean Baptiste notarized the Affidavit and mailed it to Citibank. After some time had passed, when Citibank had still not affirmatively responded, Ms. Jean Baptiste called Citibank's Fraud Department directly.

31.     On this call, Ms. Jean Baptiste was once again told she would receive her money back in 30 to 60 days.

32.     However, Citibank did not use the Affidavit to investigate the fraud and return Ms. Jean Baptiste's funds.

33.     Instead, three weeks later, on May 19, 2022, Ms. Jean Baptiste received a letter from Citibank, using the information she had shared in the Affidavit to deny her request for reimbursement because she purportedly "did not take adequate steps to safeguard [her] account."

34.     What this response failed to mention, however, is that Ms. Jean Baptiste had *immediately* and *explicitly* advised Citibank that she had not wired any money and that the fraudulent wire transfer should not be completed and be rejected, that multiple Citibank employees had assured her that it had received her rejection and that Citibank would return her money, and that she had done everything Citibank had asked of her.

35.     After receiving Citibank's letter denying her reimbursement for the fraud, Ms. Jean Baptiste visited the office of New York Assemblywoman Rodneyse Bichotte Hermelyn, her local New York State Assemblymember.

7

36.     During this visit, Ms. Jean Baptiste spoke to an employee from the Assemblywoman's office who contacted Citibank via telephone on her behalf.

37.     Shortly afterwards, on June 23, 2022, with no explanation provided, Citibank deposited $6,200.02 back into Ms. Jean Baptiste's old account.

38.     In a follow-up letter to Ms. Jean Baptiste, Citibank claimed that this partial reimbursement—only approximately 16% of the amount stolen from her—was the amount it was able to recover from the scammer's bank (or the "Beneficiary Bank" under the UCC).

**B.     Citibank's Security Procedures Breakdown**

39.     Citibank executed this wire transfer despite Ms. Jean Baptiste's express statement that she did not recognize the account activity and her prompt diligence in alerting Citibank to the fraud attack as soon as she saw Citibank's notification that the Unauthorized Transfer was being attempted from her savings account.

40.     Citibank's security protocols failed on multiple levels.

41.     *First*, Citibank ignored its own fraud detection procedures that had flagged that a suspicious transfer was being attempted from Ms. Jean Baptiste's account.

42.     *Second*, Citibank ignored the usual indicia of electronic wire transfer fraud, including: that funds from Ms. Jean Baptiste's checking account had been transferred to her savings account shortly before the transfer; the size of the transfer, which was unusual for Ms. Jean Baptiste's account; the identity of the recipient, with whom Ms. Jean Baptiste had never transacted; the internet protocol address associated with the login to Citibank's systems, which would be associated with the sender's electronic devices, not Ms. Jean Baptiste's; and that Ms. Jean Baptiste had never previously sent a wire transfer.

43.     *Third*, Citibank ignored Ms. Jean Baptiste's prompt answer to its security email, where she explicitly stated that she did not recognize and did not approve the wire transfer.

8

44.    *Finally*, Citibank, upon information and belief, did not actually lock Ms. Jean Baptiste's bank account, as suggested by the Bank's deposit of a $6,200.02 partial reimbursement two months after the fraud occurred.

45.    As a result of Citibank's multiple inexplicable failures to stop the Unauthorized Transfer, Ms. Jean Baptiste lost almost her entire life's savings to a completely preventable attack on her account.

46.    Citibank's execution of the Unauthorized Transfer was not commercially reasonable; it was an inexplicable and reckless act or omission that flies in the face of industry practice and completely undermines Citibank's own representations as to its protocols.

47.    Ms. Jean Baptiste's experience is not unique. In fact, there are numerous Citibank customers who have described similar deficiencies in Citibank's response to unauthorized and fraudulent transfers.

48.    As detailed in various other suits brought against Citibank, the Bank consistently fails to secure customers' accounts after signs of suspicious activity, instead allowing scammers to, *e.g.*, alter contact details and user credentials, lift fraud holds on users' accounts, upgrade accounts to gain access to online wire transfer services, and consolidate funds from various accounts—all without thoroughly vetting subsequent wire transfer requests.

49.    Upon information and belief, Citibank also fails to effectively monitor and police wire transfers, even when consumers have no history of such transfers from their accounts and when the transfers will almost empty those accounts.

50.    When consumers contact Citibank about fraud attacks, it fails to adequately secure their bank accounts. For example, Citibank's customer service representatives often tell consumers their accounts are locked and instruct them to visit their local branches after being

alerted of a fraudulent transaction. In reality, like Ms. Jean Baptiste's account, these consumers' accounts are not secure from scammers, and Citibank's customer service agents often do not even have the technical capability to protect them.

51.     Citibank's fraud prevention protocols appear to thus fall short of industry standards. The Bank fails to implement security measures that assess consumers' account histories, such as usage patterns and the existence and frequency of previous wire transfers, to detect and prevent unusual or anomalous transactions. Further, Citibank does not provide sufficient training for call center and fraud prevention employees.

52.     Citibank's procedures after fraudulent wire transfers occur appear to similarly be deficient. Citibank frequently encourages victims to complete an "Affidavit of Unauthorized Wire Transfer", and states that an investigation cannot commence until these affidavits are complete.

53.     In Ms. Jean Baptiste's case, once she filled out the affidavits and explained that her account credentials were taken as the result of a scam or phishing attack, Citibank weaponized this information against her to deny reimbursement of funds that were taken out of their account by a wire transfer the consumer did not initiate or authorize. Upon information and belief, these denials often use standardized language, devoid of indication that an individualized review was undertaken, just like the letter received by Ms. Jean Baptiste. In these letters, the Bank falsely blames consumers for not taking "adequate steps to safeguard" their accounts despite the Bank's vastly superior abilities to detect and prevent fraud.

54.     In sum, Citibank's fraud investigation procedures are nothing more than a Potemkin village, inviting desperate consumers to provide Citibank with ammunition to reject reimbursement.

55.     The Bank's refusal to do right by its customers defies law and reason.  N.Y. U.C.C. § 4-A-204 places the responsibility on *the Bank* to reimburse customers for electronic funds transfers that are not authorized or not effective, which the Unauthorized Transfer here was.  And the gross disparity between the average consumer's financial resources and Citi's—which has an approximate $121.64 *billion* market capitalization at the time of this submission—makes the Bank's obstinance inexplicable and reeks of injustice.

56.     Numerous consumers have been harmed by Citibank's *pro forma* security procedures and misrepresentations.  For example, the amount of complaints to the Consumer Financial Protection Bureau about Citibank concerning fraudulent money transfers more than *tripled* from 2020 to 2022, from 41 to 131 complaints.

57.     The New York State Attorney General's lawsuit against Citibank underscores that what happened to Ms. Jean Baptiste—both the Unauthorized Transfer and Citi's refusal to aid her in recovering from it—is Citibank's pattern and practice, impacting a multitude of New Yorkers. *See* Complaint, *The People of the State of New York v. Citibank, N.A.*, 24-CV-659 (S.D.N.Y. Jan. 30, 2024),  ¶¶  123-262,  *available   at*  https://ag.ny.gov/sites/default/files/2024-01/citi-complaint.pdf.

58.     Citibank's sham security procedures and protocols and its failure to credit customers' bank accounts after fraudulent wire transfers, even when it says that it will, has impacted hundreds if not thousands of consumers nationwide and is consumer-oriented conduct.

III.   **Ms. Jean Baptiste Was Seriously Harmed by Citibank's Inadequate Security Procedures and Misrepresentations**

59.     While the almost $30,000 the Bank refuses to reimburse Ms. Jean Baptiste is inconsequential to a behemoth corporation like Citi, for Ms. Jean Baptiste, this money was her life savings and her sole financial security.

11

60. The consequences of Citibank's behavior have significantly changed Ms. Jean Baptiste's life.

61. In 2021, Ms. Jean Baptiste was diagnosed with cancer and had to leave her job. In the following months her family struggled to make ends meet with just her husband's income. They have been forced to borrow money from friends and family to buy essentials for their two young children. The loss of these savings, and the Bank's inexplicable refusal to make Ms. Jean Baptiste whole again, have caused Ms. Jean Baptiste great pain and suffering. The return of the $30,000 will again give Ms. Jean Baptiste and her family a semblance of financial security and a safety net for their future.

62. Consequently, like scores of New Yorkers, Ms. Jean Baptiste brings this suit for herself and for her family to remedy Citibank's inexplicable refusal to remedy its gross malfeasance.

## CLAIMS FOR RELIEF

### COUNT I

### (N.Y. U.C.C. § 4-A-204)

63. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

64. Ms. Jean Baptiste maintained a checking and savings account with Citibank.

65. At no point did Ms. Jean Baptiste enroll in the electronic funds transfer (colloquially referred to as "EFTs" or "Wire Transfers", and termed "Payment Orders" under Article 4A) services offered by Citibank.

66. Accordingly, Ms. Jean Baptiste did not agree to any instructions or security procedures governing Wire Transfers for the accounts in her name held by Citibank.

67.    Citibank emailed Ms. Jean Baptiste on April 28, 2022 asking if she had effected a $36,200 Wire Transfer, or Payment Order, to which she immediately responded "NO", indicating she did not authorize the transfer.

68.    Regardless, Citibank disbursed $36,200 from Ms. Jean Baptiste's account, despite her clear attempt to halt the Unauthorized Transfer, and Citibank's confirmation it had received her rejection.

69.    Citibank provided Ms. Jean Baptiste with a partial reimbursement of $6,200.02 without explanation, even after the Bank had represented it was impossible to claw back her funds from the Beneficiary Bank.

70.    Under Article 4-A of the UCC, Citibank cannot refuse to refund payments for unauthorized Payment Orders unless Citibank accepted the Payment Orders in good-faith and in compliance with commercially reasonable security procedures and any instructions of its customers restricting acceptance of payment orders.  U.C.C. § 4-A-202(2).

71.    Citibank has the burden of establishing that it is more probable than not that it acted in good-faith and in compliance with the security procedures.  U.C.C. § 4-A-105(g).

72.    Under Article 4-A of the U.C.C., if Citibank executes a Payment Order that was not authorized or completed by the customer (and thus not effective as the customer's order under UCC § 4-A-202), Citibank is obligated to "refund any payment . . .and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund." U.C.C. § 4-A-204(1).

73.    Ms. Jean Baptiste did not authorize or effect the payment order that deprived her of her life savings.

74.     Upon information and belief, the Bank possesses internet protocol records that would demonstrate that a device not previously associated with Ms. Jean Baptiste's account ordered the Unauthorized Transfer. Citibank ignored several other indicia of fraud that are well-recognized by consumer banking institutions like Citibank. Regardless, the Bank disbursed the funds.

75.     Consequently, Citibank did not act in good faith or in compliance with any commercially reasonable security procedures in effecting the Payment Order that deprived Ms. Jean Baptiste of her life savings, to which Citibank was clearly aware she did not consent.

## COUNT II

### (General Business Law § 349)

76.     Plaintiff repeats and realleges the allegations in all paragraphs above.

77.     New York's General Business Law prohibits deceptive acts and practices in the conduct of any business, trade, or commerce in the state of New York. GBL § 349(a).

78.     Citibank has engaged in deceptive practices in its account administration and handling of unauthorized electronic wire transfers or Payment Orders in at least the following respects:

    a.    Citibank enticed consumers and Ms. Jean Baptiste to enroll in online and mobile banking by creating the impression that online and mobile banking are no less secure than in-person banking when in fact enrollment in online or mobile banking results in less security, including adoption of security procedures for Payment Orders sent electronically that did not rely on direct, personal verification but instead employed a single-factor verification mechanism and which permitted Citibank, at its sole discretion, to choose from other weak security procedures (or

14

none, as in Ms. Jean Baptiste's case) that did not effectively prevent or void unauthorized Payment Orders;

b.     Citibank misrepresented consumers' and Ms. Jean Baptiste's rights and obligations with respect to unauthorized electronic funds transfers, including by failing to immediately investigate notices of unauthorized electronic funds transfers and failing to provisionally credit consumers' bank accounts;

c.     Citibank represented that bank accounts are frozen and secured following attacks, and directed consumers like Ms. Jean Baptiste to visit local branches when in fact the bank accounts were not safe from fraudsters;

d.     Citibank's representatives often do not secure or even have the ability to secure consumers' accounts, and scammers retain ability to access online or mobile banking and successfully send fraudulent Payment Orders electronically by satisfying alternative security procedures;

e.     Citibank requires consumers like Ms. Jean Baptiste who notify the Bank of unauthorized electronic funds transfers to execute affidavits asserting claims for unauthorized wire transfers, despite the unreasonableness of this procedure in the face of the near instantaneous nature of theft via electronic funds transfer;

f.     repeatedly advised consumers and Ms. Jean Baptiste that no action could be taken, including any investigation, unless consumers executed affidavits;

g.     Citibank encouraged consumers and Ms. Jean Baptiste to complete affidavits that describe the circumstances that led to scammers illicitly accessing online or mobile banking under the pretense of needing affidavits to initiate investigations to recover

consumers' funds, at a time when consumers were under severe duress, but then
weaponizes the information provided by consumers to deny their fraud claims;

h.  Citibank does not immediately attempt to recall funds sent to beneficiary banks
following notice of fraudulent activity, delaying for days or even weeks—two
months here—often after having indicated that funds lost as a result of fraud would
be returned; and

i.  Citibank misleadingly represented in its standard form denials for "unauthorized
online wire transfers" that consumers, including Ms. Jean Baptiste, acted
improperly—such as not taking "adequate steps to safeguard" accounts or
"providing customer account information" in responses to scams—as bases to deny
any obligation by Citibank to reimburse, which falsely leads consumers to believe
that their own actions were relevant and deprived them of their legal rights to
recover stolen funds.

79.  As stated in the facts section above, Citibank's deceptive business practices have
negatively impacted hundreds of consumers, making its conduct consumer-oriented.

80.  As a result of Citibank's deceptive business practices, and Ms. Jean Baptiste has
suffered losses in the amount of $30,024.98 as well as further damages in an amount to be proven
at trial.

**COUNT III**

**(Gross Negligence)**

81.  Plaintiff repeats and realleges the allegations in all paragraphs above.

82.  Citibank is obligated to act in good-faith in administering its customers' accounts,
including by employing reasonable care in protecting its customers from fraud attacks.

16

83. Citibank has failed to adopt reasonable administrative and technical safeguards, and to identify and respond to the reasonably foreseeable risks posed by scammers accessing financial account information, including as to Ms. Jean Baptiste.

84. Citibank has failed to adopt appropriate layered security, including multi-factor authentication, algorithmic monitoring of consumer and account behavior, mechanisms to identify high-risk transactions or anomalous behavior that trigger strengthened procedures, or transaction limitations based on frequency, volume, and repeat activity.

85. Citibank has failed to train and manage employees to respond to consumers' notice of fraudulent online or mobile banking access or unauthorized payment activity, including:

   a. failing to train or require employees to secure bank accounts such that scammers could no longer engage in unauthorized activity following notice via email or verbal notice over the phone;

   b. failing to train or require employees to secure bank accounts such that scammers could no longer engage in unauthorized activity following electronic notice;

   c. failing to train or require employees to reject all Payment Orders after consumers had provided notice that those Payment Orders were unauthorized and were the result of scammers fraudulent access to online or mobile banking.

86. Instead, Citibank trains or instructs employees to advise consumers to travel to local branches as a condition to secure bank accounts so that scammers could no longer engage in unauthorized activity, despite the unreasonableness of this procedure in light of the instantaneous nature of Wire Transfers.

87. Even where its own systems detect fraud, Citibank does not respond in in good-faith but instead accepts large-dollar Payment Orders following anomalous account activity,

including (i) changes to consumers' usernames or passwords; (iii) enrollments in online wire transfer services; and (iv) transfers from consumers' other bank accounts that left near-zero balances in those accounts.

88.     Citibank's failure to properly train its employees to recognize and affirmatively mitigate fraud, and failure to act to prevent fraud where it is discovered, demonstrates deficiencies in the Bank's procedures that are materially distinguishable from its erroneous processing of the payment order.

89.     It was foreseeable that the deficiencies in Citibank's security procedures would cause consumers like Ms. Jean Baptiste harm.

90.     Citibank's acts and omissions demonstrate that Citibank failed to protect its customers' financial accounts, including Ms. Jean Baptiste's, by ignoring repeated flags or indices of fraud associated with the fraudulent wire transfer.

91.     Citibank's acts and omissions demonstrate a conscious and willful indifference to known risks and a reckless disregard for the property of others.

92.     Citibank's negligent effecting of the Payment Order disbursing Ms. Jean Baptiste's life savings were both the actual and proximate cause of Plaintiff's loss.

93.     Ms. Jean Baptiste has suffered damages in the amount of $30,024.98 plus interest, and further damages in an amount to be proven at trial.

## COUNT IV

### (Negligence and/or Breach of the Duty of Ordinary Care)

94.     Plaintiff repeats and realleges the allegations in all paragraphs above.

95.     Citibank is obligated to exercise reasonable care and act in good-faith in the administration of customers' accounts.

96.     Citibank failed to exercise the prudence or caution that would be reasonable under the circumstances by failing to adopt and/or adhere to the security procedures set forth above.

97.     Citibank's disbursement of Ms. Jean Baptiste's life savings to the scammers regardless of circumstances Citibank itself described as "suspicious" evidences a deviation from standard industry practices and that Citibank acted unreasonably under the circumstances.

98.     Citibank's failure to properly train its employees to recognize and affirmatively mitigate fraud, and failure to act to prevent fraud where it is discovered, demonstrate a deficiency in the bank's procedures that is materially distinguishable from its erroneous processing of the payment order.

99.     Citibank's acts and omissions were both the proximate and actual cause of Ms. Jean Baptiste's loss.

100.    Ms. Jean Baptiste has suffered damages in the amount of $30,024.98 plus pre- and post-judgment interest, and further damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

101.    Plaintiff seeks the reimbursement of her recklessly disbursed life savings, in the amount of $30,024.98 plus pre- and post-judgment interest.

102.    Plaintiff seeks consequential damages for the pain and suffering she has suffered as a result of Citibank's reckless acts and omissions.

103.    Plaintiff seeks punitive damages against Citibank for the Bank's gross negligence in executing the Unauthorized Transfer.

104.    Plaintiff seeks reasonable attorney's fees and costs under GBL § 349, as well as actual damages, statutory damages and treble damages up to the maximum amount permitted under that act.

19

105.     Plaintiff seeks actual damages, direct damages, consequential damages, economic

damages, out-of-pocket expenses or damages, reliance damages, and/or all other relief the Court

deems just and proper.

Dated:          April 28, 2025                  By:          _/s/ Rajat Rana_____
                New York, New York

                                                             **QUINN EMANUEL URQUHART &
                                                             SULLIVAN, LLP**
                                                             Sascha N. Rand
                                                             Rajat Rana
                                                             Kamya Trivedi
                                                             Quinn Emanuel Urquhart & Sullivan,
                                                             LLP
                                                             295 Fifth Avenue, 9th Floor
                                                             New York, New York 10016
                                                             (212) 849-7000
                                                             sascharand@quinnemanuel.com
                                                             rajatrana@quinnemanuel.com
                                                             kamyatrivedi@quinnemanuel.com

                                                             **LEGAL AID SOCIETY**
                                                             Elizabeth M. Lynch
                                                             Claire Mooney
                                                             153-01 Jamaica Avenue Suite 202
                                                             Jamaica, New York 11432
                                                             (718) 286-2450
                                                             emlynch@legal-aid.org
                                                             cmooney@legal-aid.org

                                                             *Attorneys for Noemie Prophete Jean
                                                             Baptiste*

20

## VERIFICATION

**NOEMIE PROPHETE JEAN-BAPTISTE**, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_Noemie Prophete_
Noemie Prophete Jean-Baptiste

On the 25th day of April in the year 2025, before me personally appeared the undersigned, NOEMIE PROPHETE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and I further certify that the same NOEMIE PROPHETE was, by her signatures on the instrument, the individual who executed the instrument.

Sworn to before me this
25th day of April, 2025.

_____
Notary Public

KAREN HERVEY
Notary Public-State of Florida
Commission # HH 165387
My Commission Expires
August 16, 2025

## AFFIDAVIT OF TRANSLATION

I, Sandy Manzolillo, accurately read and translated each and every paragraph of the

Complaint in the above-entitled action from English to Haitian Creole to the Plaintiff.

Dated: April 28, 2025
New York, NY

_____
Sandy Manzolillo

On the 28 day of April in the year 2025, before me personally appeared the

undersigned, Sandy Manzolillo, personally known to me or proved to me on the basis of

satisfactory evidence to be the individual whose name is subscribed to the within instrument and

acknowledged to me that she executed the same in her capacity, and I further certify that the

same Sandy Manzolillo was, by her signatures on the instrument, the individual who

executed the instrument.

Sworn to before me this

28 day of April , 2025.

ELAINE L. CHAN-LEE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01CH6215744
Qualified in Kings County
Commission Expires January 4, 2026

_____
Notary Public

# Exhibit A



**MARCH 10, 2020**

CITIBANK, N.A.
NOSTRAND/NEWKIRK
1871 NOSTRAND AVE
BROOKLYN, NY 11226

NOEMIE P JEAN BAPTISTE
720 EAST 31ST STREET APT# 4E
BROOKLYN, NY 11210

## CITI PRODUCTS OPENED/ APPLIED FOR TODAY - EFFECTIVE DATE*: MARCH 10, 2020

### RELATIONSHIP SUMMARY

| | |
|---|---|
| Checking | $500.00 |
| Savings | $2,000.00 |
| Retirement (FDIC insured) | NA |
| Loans/Lines | NA |
| Credit Cards | NA |

## Citibank
**Banking Package: Checkless Transaction**

| Checking Option | Account Number | | Interest Rate** | Annual Percentage Yield** | Balance*** |
|---|---|---|---|---|---|
| Access Checking<br>NOEMIE P JEAN BAPTISTE | 6864511905 | | NA | NA | $500.00 |

| Savings | Account Number | Maturity | Interest Rate** | Annual Percentage Yield** | Balance*** |
|---|---|---|---|---|---|
| Citi Savings<br>NOEMIE P JEAN BAPTISTE | 6864511913 | NA | See Rate Sheet | See Rate Sheet | $2,000.00 |

| Retirement | Account Number | Status | Maturity | Interest Rate** | Annual Percentage Yield** | Balance*** |
|---|---|---|---|---|---|---|
| | | | | | | |

| | |
|---|---|
| **Total Checking, Savings, Retirement** | $2,500.00*** |

| Loans/Lines | Status |
|---|---|
| | |

| Credit Cards (Issued by Citibank,N.A.) | Status |
|---|---|
| | |

*Citibank, N.A. is custodian of your Citibank IRA and trustee of your Citibank Keogh Plan. All funds deposited in your KEOGH CDs, Savings, and Money Market accounts are held as deposits of Citibank, N.A.*

\* The "Effective Date" of an account opening applies to a Citibank, N.A. non-retirement deposit account only. The opening date for a loan or line of credit, credit card or a retirement account (IRA or Keogh) may be later than the Effective Date listed above and will be confirmed to you in a separate written notice.

\*\* Disclosed interest rates and annual percentage yields reflect current rate minimums only. Your rates and yields may be different. For current rates please refer to the Consumer Deposit Accounts or Annual Percentage Yield - IRA/Keogh/Coverdell Products rate sheet, provided at account opening. For the Step Up Certificate of Deposit (CD), the Annual Percentage Yield (APY) is the Composite APY which is calculated based on two or more interest rates applied in succeeding periods during the CD term. For the Step Up CD, the Interest Rate is the initial interest rate for the first interest rate period of the CD term; the increased interest rates for each succeeding interest rate period and duration are disclosed on the Consumer Deposit Accounts rate sheet you received at account opening.

\*\*\* All deposits are verified and credited, and will be reflected accordingly on your account statement. All disclosed account balances reflect your intended initial deposit only. Rates are based on the "balance(s)" shown on this statement. Actual interest rates and annual percentage yields, or the Composite APY for the Step Up CD, are determined by both account balances, and your account banking package, and may vary from what is listed on this statement. Please refer to the Client Manual - Consumer Accounts and Marketplace Addendum for additional important information about your CD and your deposit relationship with Citibank.



MARCH 10, 2020

CITIBANK, N.A.
NOSTRAND/NEWKIRK
1871 NOSTRAND AVE
BROOKLYN, NY 11226

NOEMIE P JEAN BAPTISTE
720 EAST 31ST STREET APT# 4E
BROOKLYN, NY 11210

CREDIT CARDS

Citibank credit cards are issued by Citibank, N.A.

Citibank is an Equal Housing Lender.

© 2019 Citibank, N.A. Member FDIC. Citibank, Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc. or its affiliates, used and registered throughout the world.

INDEX NO. 514126/2025
Rev November 2018

RECEIVED NYSCEF: 04/28/2025

# citibank

| **FACTS** | WHAT DOES CITIBANK DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• account balances and employment information<br>• credit history and transaction history |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Citibank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Citibank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| *For our affiliates' everyday business purposes –* information about your credit worthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| **To limit our sharing** | • Call 1-888-214-0017 – our menu will prompt you through your choices. For Speech and Hearing Impaired Customers Only, TTY: (800) 945-0258<br><br>Please note:<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| **Questions?** | Call 1-888-214-0017. For Speech and Hearing Impaired Customers Only, TTY: (800) 945-0258 |

Item CON-001

## Page 2

### Who we are

| | |
|---|---|
| Who is providing this notice? | This notice is provided by Citibank, N.A. for individual clients of its retail banking business in the United States. |

### What we do

| | |
|---|---|
| How does Citibank protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does Citibank collect my personal information? | We collect your personal information, for example, when you<br>• provide account information or give us your contact information<br>• provide employment information or apply for a loan<br>• make deposits or withdrawals from your account<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes–information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account–unless you tell us otherwise. |

### Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with a Citi name; financial companies such as Citigroup Global Markets Inc.* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Nonaffiliates we share with can include companies engaged in direct marketing and the selling of consumer products and services.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include insurance companies and other financial companies.* |

### Other important information

**For Vermont Residents:** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. For additional information concerning our privacy policies call 1-888-214-0017. For Speech and Hearing Impaired Customers TTY: (800) 945-0258.

**For California Residents:** We will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account.

Citi acquires and uses services provided by third parties that collect and analyze customer data. This information may be used to service your accounts and for marketing purposes. For additional information about our privacy practices please go to **www.citi.com/privacy**.

## CUSTOMER CARE CHECKLIST



To assure that we have acquainted you with the benefits of your account, and we have accurately captured your needs, let's review the following:

➤ **Personal Information** – verified that all information is correct

| | |
|---|---|
| NOEMIE P JEAN BAPTISTE<br>Home 720 EAST 31ST STREET APT# 4E<br>Address: BROOKLYN NY 11210<br><br>Phones:<br><br>Cell Phone: 347-576-3814 | **Mailing Address**<br>720 EAST 31ST STREET  APT 4E<br>BROOKLYN , NY 11210 |

➤ **Checkbook Information** – verified that all information is correct

| Name/ Address to be printed on checks | Mailing Address for checks |
|---|---|
| | Checkbook Style:<br>Checkbook Cover:<br>Checkbook Cost:<br>Special Features: |

➤ **Citibank℠ Banking Card** – verified that all information is correct

| | NOEMIE P JEAN BAPTISTE | |
|---|---|---|
| ATM PIN set | N | |
| Telephone PIN set | N | |
| | | |
| | | |
| | | |
| | | |

➤ **Account Features** –
  o  Direct Deposit – free, fast, automatic.
  o  Citibank® Online – bill payments, automatic transfers, account servicing, immediate account activity.
  o  ATM – view transactions, transfer funds, get cash, make deposits.
  o  *Citiphone Banking®* – customer service 24/7 with the number on the back of your bankcard.

➤ *Bank Services* –
  o  *ThankYou* – earn rewards for everyday transactions.
  o  *Citipro®* – discussed how a complimentary Citipro® financial review could assist you in meeting personalized financial goals.
  o  AutoSave – pay yourself first to help save for personal goals.

➤ **Service Calls:**
  o  14 days - I will be calling you on ___/___/____ at ____:____ AM/PM at ( )____-____ to ensure receipt of your checks, bankcard, and answer any questions.
  o  20-60 days – Welcome call performed by our Customer Care Associate to ensure all of your questions have been addressed and to verify that you are satisfied with your account benefits.

➤ **Client Manual and Marketplace Addendum** – Explained & given to Client.

➤ **Account Requirements** – Reviewed the fee schedule and associated charges.

➤ **Funds Availability** – Funds may become immediately available with Checking Plus (variable rate) Line of Credit and SafetyCheck.

➤ **Disclosures** – Provided the following as applicable:
  o  Checking Plus (variable rate) Line of Credit
  o  Ready Credit
  o  Flexible Credit
  o  Citi® Card Take One application

# There's only one thing you need to help manage your fees: The facts.

## Access Account Package: Summary of Common Fees and Features

| | | |
|---|---|---|
| Minimum Deposit Needed to Open a checkless Regular Checking Account | $0 | |
| Monthly Service Fee **Waived When Requirements Are Met** | ~~$10~~ $0 | Waived if you satisfy ONE of the following: |
| | | 1. Maintain $1,500 or more in combined average monthly balances in a checkless Regular Checking account and linked savings or money market accounts in an Access Account Package. |
| | | OR |
| | | 2. 1 Qualifying Direct Deposit credited to your checkless Regular Checking account, savings or money market account in an Access Account Package. |
| | | OR |
| | | 3. 1 Qualifying Bill Payment posted to your checkless Regular Checking account during your statement period |
| Interest Checking | | Not available |
| Citibank ATM Fee | $0 | Get cash with no surcharge fee through our network of thousands of ATMs in the U.S. Locate one near you at www.citibank.com/locations |
| Non-Citibank ATM Fee | $2.50 | Per withdrawal fee for using a Non-Citibank ATM. (No fee for Citibank transfers or balance inquiries). Other banks may assess a third party ATM surcharge fee. |
| Deposited Check Returned Unpaid | $12 | Per check you deposit that is returned unpaid |
| Stop Payment Fee | $30 | Per item you ask to stop payment on |
| For Debit Card Purchases and ATM Withdrawals | $0 | If you do not have available funds to cover a debit card purchase or ATM transaction, we will decline the transaction at no cost to you |
| Insufficient Funds Fee | $0 | An insufficient funds fee occurs when we do not pay the item |
| Overdraft Fee (in cases of insufficient funds) | $0 | The Access Account Package is designed so that certain transactions that are over your available balance will not be authorized on a checkless Regular Checking account, savings or money market accounts. Also, there are no overdraft charges for any Citibank fees, such as monthly service fees, that post to any checkless Regular Checking account, savings or money market accounts in the Access account package. |
| Safety Check | Waive | Transfer funds from a linked savings or money market to a checkless Regular Checking account to avoid returned items due to overdrafts. |
| Checking Plus (Variable Rate) Line of credit | | New checkless Regular Checking Accounts in an Access Account Package cannot have a linked Checking Plus (variable rate) account. |
| Checks cannot be ordered or written with this package | Transactions that involve a check, including written checks, check by phone or third party authorizations that come through as a check will not be honored on a checkless Regular Checking account, savings or money market accounts in an Access Account Package. Do not order checks from any source. Be careful when providing your account and routing numbers to merchants for a payment, since they may process the payment as a check which will be rejected and not paid. Ensure that the merchant is using the ACH (Automated Clearing House) system to process the transaction as an electronic debit, as ACH is an accepted form of payment with the Access Account. | |
| The order in which your deposits and withdrawals are processed | Generally they are processed as follows: **First:** Deposits made before the cut-off time are added to your account balance. **Second:** Fees for services we provide. **Third:** Transactions received real-time during the day are deducted as they occur if there is a sufficient available balance in the account to pay for the transaction and any associated fee. Example: ATM, debit PIN or teller withdrawals including cashed checks, transfers or Citibank® Online bill payments initiated by you, debit card purchases at a merchant and most ACH debits* that we receive throughout the day. **Fourth:** Any ACH debit* not deducted during the day are deducted from your remaining available balance in the order of lowest to highest dollar amount. *ACH (Automated Clearing House) debits are received electronically through a merchant you have instructed to bill your checking account (i.e., for your utility or phone bill). | |
| When your deposits to your checking account become available | Cash Deposit with Teller | Generally available immediately on same Business Day of deposit |
| | Cash Deposit at ATM | Generally available immediately, but no later than next Business Day after the Business Day of deposit |
| | Check Deposit with Teller | Generally available no later than the next Business Day after the Business Day of deposit |
| | Check Deposits at Proprietary Citibank ATMs | Generally available no later than the next Business Day after the Business Day of deposit |
| | Direct Deposit | Same Business Day of deposit |
| | Wire Transfer | Same Business Day of deposit |
| | If a longer delay is placed on your deposit, we will tell you when you make the deposit, and the first $200 of your deposit will be made available the next Business Day after the Business Day of deposit. If your deposit is not made directly with a teller, or if we decide to place a longer delay on your deposit after you have left the branch, we will mail you the notice by the next Business Day. A "Business Day" is any day of the week that is not a Saturday, Sunday, or bank holiday. The end of Business Day is posted at each branch and varies by location. | |

**Any questions?** Call us at 1-888-CITIBANK (1-888-248-4226) | TTY 1-800-945-0258.

## Make the Most of Your Citibank Relationship

- Mobile and online banking options to help manage finances wherever you are
- Set up free Online Bill Payment
- Direct deposit of your paycheck or other checks to save on trips to the branch or ATM
- Use Citi Financial Tools® to manage your budget
- Set up Auto Save to help with your monthly savings plan

## Helpful Ways to Avoid or Reduce Fees

- Get cash with no surcharge fee through our network of thousands of ATMs in the U.S. Locate one near you at www.citibank.com/locations
- Use your no monthly fee debit card for cash back at select merchants that offer this service
- Set up balance and bill payment alerts on Citibank Online to help manage your accounts and avoid overdrafts
- Use our Online Wire Transfer services to reduce wire transfer fees
- Use Citibank Online to get up to 7 years of online statement history, reducing potential statement copy fees
- Send a Citibank Global Transfer from your Citibank account to other eligible Citibank accounts in the world with no transfer fee. If the Citibank Global Transfer is made in a foreign currency, the exchange rate includes a commission for the currency conversion. Citibank Global Transfers are limited to select countries. Limits apply and vary by country

## Optional Services Available

| Service | | Fee | What does this service provide? |
|---|---|---|---|
| **Transfer Services** | | | |
| Wire Transfer: | Incoming Domestic and International | $15 | Transfer funds into your account from anywhere in the U.S. or abroad |
| | Outgoing Domestic/International | $35/$45 | Fee for initiating a wire transfer in a branch |
| | Online Outgoing Domestic/International | $25/$35 | Fee for initiating a wire transfer online |
| **Travel/Foreign Currency Services** | | | |
| Foreign Currency Exchange   $1,000 and over/Under $1,000 | | no charge/$5 | Changing U.S. dollars into foreign currency or vice versa |
| Foreign Exchange Fee | | 3% of transaction amount | Transactions made outside the U.S. and Puerto Rico using a Citibank Banking card |
| **Bank Checks/ Official Checks/ Debit Cards** | | | |
| Official Check | | $10 | Obtaining a check that is the obligation of a bank |
| Expedited Domestic Delivery of Replacement Debit Cards | | $6 | Rush delivery in 1 to 2 Business Days of your debit card |
| Money Order for Customers | | $5 | A money order can be used instead of a check |
| **Research and Process Fees** | | | |
| Consular Verification or Reference Letter | | $25 | A Consular letter issued to Consulates or the Immigration Department to provide customer identification or a reference letter about a customer's account |
| Legal Process Compliance | | $125 per defendant and occurrence | Court-ordered bank levy, account liens, etc. |
| **Collection Services** | | | |
| Bond Coupon Redemption (per series) | | $10 | Collect payment for a bond issued by a corporation, federal, state or local government agency |
| Collection of Notes and Sight Drafts on Domestic Bank | | $25 | Accepting notes for deposit into accounts and collecting and depositing of note interest upon maturity |
| Collection of Checks from Foreign Banks | | $30 plus 3rd party bank charges | Collection of checks drawn on foreign banks |
| Domestic Bank Collections | | $25 plus 3rd party bank charges | When a U.S. check is sent for payment on a collection basis |
| **Copy of Statements, Records and Certificates** | | | |
| Interim Statement | | $5 | Providing a copy of a statement from your last statement date to a mid point date you provide us |
| Miscellaneous Copies | | $5 | Making copies of other documents such as deposit tickets or IRS Form 1099 |
| Statement Copy (previous month) | | $5 | Fee for obtaining a statement copy from the previous statement cycle; free statements are available online |

## We're here to help

Just give us a call anytime at 1-888-CITIBANK (1-888-248-4226) TTY 1-800-945-0258, speak with a Personal Banker at your nearest local branch, Tweet us at @AskCiti or visit us at www.citibank.com.

## Additional Account Packages to Meet Your Needs

We also offer the Citigold Account, Citi Priority Account, Citibank Account and Basic Banking packages that may be right for you.

## Don't have an account?

Apply now or call us at 1-800-374-9500 (TTY 1-800-945-0258).

This fact sheet is a summary of certain fees and features of your account. For more complete information about your account, please see your Marketplace Addendum and Client Manual – Consumer Accounts.

**Terms, conditions and fees for accounts, products, programs and services are subject to change.**

© 2017 Citibank N.A. Member FDIC. All rights reserved. Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc. or its affiliates, used and registered throughout the world.



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

---

NOEMIE PROPHETE JEAN-BAPTISTE,

*Plaintiff,*

- against -

CITIBANK, N.A., CITIBANK, N.A. 1871 NOSTRAND
AVENUE, BROOKLYN, NY 11226

*Defendants.*

---

Index No. _____

**PART 130**
**CERTIFICATION**

---

The undersigned certify pursuant to 22 NYCRR § 130-1.1-a that, to the best of their knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the contentions therein are not frivolous as defined in 22 NYCRR § 130-1.1(c), and this matter was not obtained in violation of Part 1200 or through any other illegal conduct.


Dated:     April 28, 2025
          New York, New York

By: */s/ Rajat Rana*

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
Sascha Rand
Rajat Rana
Kamya Trivedi
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
sascharand@quinnemanuel.com
rajatrana@quinnemanuel.com
kamyatrivedi@quinnemanuel.com

**LEGAL AID SOCIETY**
Elizabeth M. Lynch
Claire Mooney
Jamaica Avenue Suite 202
Jamaica, New York 11432
(718) 286-2450
emlynch@legal-aid.org
cmooney@legal-aid.org

*Attorneys for Noemie Prophete Jean-Baptiste*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**
Attorney: Quinn Emanuel Urquhart & Sullivan, LLP
Address: 295 5th Avenue New York, NY 10016

Job #: 1497965

| | |
|---|---|
| NOEMIE PROPHETE JEAN-BAPTISTE, | Index Number: 514126/2025 |
| *vs* Plaintiff | Client's File No.: |
| | Court Date: |
| CITIBANK, N.A., CITIBANK, N.A. 1871 NOSTRAND AVENUE, BROOKLYN, NY 11226 | Court Time: |
| *Defendant* | Date Filed: 04/28/2025 |

# AFFIRMATION OF SERVICE

**Latchme D. Drepaul**, affirms and says:

Affirmant is not a party herein; is over the age of 18 years and resides in the State of New York.

On **4/29/2025**, at **2:00 PM** at: **28 LIBERTY STREET, 42ND FLOOR, NEW YORK, NY 10005.** Affirmant served the within **Summons, Verified Complaint with Exhibit A, Part 130 Certification, and Notice of Electronic Filing (Consensual Case) - Form EF -3**

On: **CITIBANK, N.A. c/o CT CORPORATION SYSTEM**, therein named.
Said documents were conformed with index number and date of filing endorsed thereon.

☒ **#1 Corporation or Partnership or Trust or LLC or Agency or P.C. or Banking Institution or Insurance Company/ Agency**
By delivering thereat a true copy of each to Joseph McCabe personally. Affirmant knew said entity to be the corporation/partnership /trust /LLC/ agency/ P.C. /banking institution / insurance company/ agency described in said aforementioned document as said defendant and knew said individual to be Intake Specialist thereof, authorized to accept on behalf.

☒ **#2 PERCEIVED DESCRIPTION**
    **Gender:** Male    **Race:** White    **Color of hair:** Blonde    **Glasses:** Yes
    **Age:** 26 - 35 Yrs.    **Height:** 5ft 4inch - 5ft 8inch    **Weight:** 161-200 Lbs.        **Other Features:**

☐ **#3 WITNESS FEES**
    Subpoena Fee Tendered in the amount of $.

☒ **#4 OTHER**
    Served by e-delivery via CT Corporation Portal Upload, Job No. 632917.

I affirm on 04/30/2025 under the penalties of perjury under the
laws of New York, which may include a fine or imprisonment,
that the foregoing is true, and I understand that this document
may be filed in an action or proceeding in a court of law.



Latchme D. Drepaul
License# 2066896-DCA

*Court Support, Inc., 265 Post Ave #150, Westbury, NY 11590 License #1382542-DCA*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**
Attorney: Quinn Emanuel Urquhart & Sullivan, LLP
Address: 295 5th Avenue New York, NY 10016

**Job #:** 1497967

| | |
|---|---|
| NOEMIE PROPHETE JEAN-BAPTISTE,<br><br>*vs*<br><br>*Plaintiff*<br><br>CITIBANK, N.A., CITIBANK, N.A. 1871 NOSTRAND AVENUE, BROOKLYN, NY 11226<br><br><br>*Defendant* | **Index Number:** 514126/2025<br>**Client's File No.:**<br>**Court Date:**<br>**Court Time:**<br><br><br>**Date Filed:** 04/28/2025 |

# AFFIRMATION OF SERVICE

**Ashraf Elhashash**, affirms and says:

Affirmant is not a party herein; is over the age of 18 years and resides in the State of New York.

On **4/29/2025**, at **4:47 PM** at: **1871 NOSTRAND AVENUE, BROOKLYN, NY 11226.** Affirmant served the within **Summons, Verified Complaint with Exhibit A, Part 130 Certification, and Notice of Electronic Filing (Consensual Case) - Form EF -3**

On: **CITIBANK, N.A. 1871 NOSTRAND AVENUE, BROOKLYN, NY 11226**, therein named.
Said documents were conformed with index number and date of filing endorsed thereon.

☒ **#1 Corporation or Partnership or Trust or LLC or Agency or P.C. or Banking Institution or Insurance Company/ Agency**
By delivering thereat a true copy of each to Angemarie Charles personally. Affirmant knew said entity to be the corporation/partnership /trust /LLC/ agency/ P.C. /banking institution / insurance company/ agency described in said aforementioned document as said defendant and knew said individual to be Banker thereof, authorized to accept on behalf.

☒ **#2 PERCEIVED DESCRIPTION**
**Gender:** Female    **Race:** Black    **Color of hair:** Black    **Glasses:** No
**Age:** 36 - 50 Yrs.    **Height:** 5ft 0inch - 5ft 3inch    **Weight:** 131-160 Lbs.    **Other Features:**

☐ **#3 WITNESS FEES**
Subpoena Fee Tendered in the amount of $.

☐ **#4 OTHER**

I affirm on 04/30/2025 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Ashraf Elhashash
License# 2115616-DCWP

*Court Support, Inc., 265 Post Ave #150, Westbury, NY 11590 License #1382542-DCA*